THOMAS W. BENJAMIN, SAMUEL BRIGGS, ABRAM H. RYERSON AND ALFRED H. JACKSON v. THE BOG AND FLY MEADOW COMPANY, TUNIS RYERSON ET AL., MANAGERS, ET AL.

Argued February 19, 1902—Decided June 9, 1902.

1. Legislation for the drainage of meadows, which authorizes an assessment of the expenses otherwise than in proportion to the benefit received, and which, therefore, can be supported only on "inveterate usage," must confer upon the persons so to be assessed a right to participate in the management of the enterprise.

2. The supplements passed in 1875 and 1894 to the Bog and Fly Meadow act of 1811 are incapable of validating assessments on lands lying outside of that meadow, because the owners of such lands have no right to take part in the management of the enterprise.

On *certiorari*.

Before Justices DIXON and COLLINS.

For the prosecutors, *Edward W. Benjamin*.

For the defendants, *J. S. Salmon*.

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up assessments made in the year 1894 upon the lands of the prosecutors by the managers of the Bog and Fly Meadow Company.

That company was organized under "An act to authorize the ditching and draining of the bog and fly meadow in Morris county," passed February 20th, 1811. The general design of the act was that the owners and possessors of that meadow should meet annually at a designated time and place and choose managers for the ensuing year; that the managers should have charge of ditching and draining the meadow and should assess the cost and expenses "upon the owners and possessors of the meadow in proportion as well to the quantity each person owns or is possessed of, as the benefits each shall receive therefrom;" and that the sum so assessed against each person should be collected by sale of his goods, or, in default of goods, by sale, for a term of years, of his land in the meadow.

The area of the bog and fly meadow seems to have been fixed by a map thereof made September 20th, 1810, by Tunis Ryerson, and referred to in section 8 of the act, as well as by proceedings under the act; and according to the boundaries thus ascertained it did not include any of the land for which the assessments now under review were levied.

These assessments are rested upon two supplements to the

act of 1811, one approved April 1st, 1875 (*Pamph. L., p.* 439), the other May 1st, 1894. *Pamph. L., p.* 594. These supplements purport to authorize assessments against "the owners of lands lying near to and along Beaver Dam brook," which brook forms the southerly boundary of the bog and fly meadow, the said assessments to be "in proportion to the quantity of land each person or corporation may own, fronting either upon said brook or benefited by said opening, clearing out, widening or straightening."

It is very doubtful whether the title of these supplements can cover an enactment authorizing a charge upon lands outside of the bog and fly meadow, as fixed under the act of 1811, but assuming that the title is sufficient, we think the assessment prescribed by these supplementary statutes is unconstitutional.

Under our decisions, a compulsory assessment for the special benefit resulting to land from the improvement thereof must, generally, be levied in proportion to the benefit received. These supplements direct that the assessments shall be levied in proportion to the quantity of land. Under the general rule, therefore, the assessments cannot be sustained.

But an exception to this general rule seems to have the approval of our Court of Errors and Appeals in *Hoagland* v. *Wurts,* 12 *Vroom* 175. Such exception is there said to rest wholly upon "inveterate usage" of so long continuance and such general recognition as to have become a part of our local common law. But because this exception is sanctioned by usage only it cannot uphold a scheme that essentially departs from the usage. One essential feature of this usage is, we think, that the parties who are to be charged with the expenses of an improvement shall have the right of participating in the control of the undertaking. Such is the view expressed in the case above referred to and warranted by most of the statutes authorizing enterprises of this character, including the act of 1811. But this essential is ignored in the supplements of 1875 and 1894, which seek to charge the owners of land outside of the bog and fly meadow with part

of the expense of the drainage, without giving them any voice in the management of the work.

For this reason we think the supplements are incapable of supporting the assessments now under review, and those assessments, with the proceedings to enforce the same, are therefore set aside, with costs.